Meyers v. Lamer and we'll hear first from Mr. Beckman. Thank You Your Honor. Good morning. The issue in this case is whether the magistrate judge's decision granting summary judgment to the defendant was in that there were multiple disputes of material fact that precluded the magistrate judge from granting the summary judgment motion. I know the court is familiar with the facts. Briefly what happened is that Mr. Meyers was injured when a tractor-trailer collided with a boom bucket which he was working in and which was located over Maryland Route 5 in Southern Maryland. The lower court concluded that as a matter of law Mr. Meyers was both contributory negligent and that he assumed the risk of his injuries. We submit to Your Honors that the facts in this case and the law dictate otherwise. One of the most important issues in this case that had to be decided precluded summary judgment and that was the issue of proximate cause. What was the proximate cause of this incident? Was this the proximate cause of Mr. Lamer who drove through based on the testimony and the facts? What amounted to eight warning side, side warning signs located a mile and a half, a mile, a half a mile, a quarter of a mile from the incident and an arrow board telling him to move. What did the warning signs say? The warning signs say men working. All right, okay, men working. What's the direction to him? Be aware. You're a tractor-trailer. Be aware. All right, be aware but you're still moving, right? You're still moving. All right, go ahead. What's the next one? So and move closer according to the testimony of Mr. Lamer, he observed he's talking on his cell phone. He's talking to his wife. This is a truck driver? This is the truck driver. His wife had just had a baby. They were talking on the phone and he was heading towards the intersection. He says that and the testimony is conflicting that he was as far back as three quarters of a mile but at least as far as 200 yards when he observed the bucket in the intersection. Did he ever see the signs? He says he never saw the signs and there is testimony in the record that these signs were up and these signs and this intersection was set up in a way that was consistent with the way that it should have been set up. Warning the person that there was a work ahead and an arrow board indicating move to the left. None of which he did. Okay, so you're establishing his negligence right now. I'm establishing his negligence but it is relevant, your honor, to the issue of proximate cause. It is relevant if to the extent that you can show that it's 100%. No, I don't have to show 100%. All I have to show is that he was a cause of the incident. Proximate cause. It's a matter of law, if your client is contributory negligent, don't you lose? If my client is contributory negligent, I lose. Which includes 1%. Yes, that is correct. All right. But the question is whose act of negligence was the proximate cause of this incident? Was it the action of the truck driver who says that he saw the bucket, didn't sound a sworn, didn't move to the left, but attempted to get under the bucket because he think he could make it? Was it the cause? Moved into the left bucket. He would have been moved into a turn lane or he could have slowed down. What was the condition of that lane? The lane was open. There was no indicate. In this record? I believe so, your honor. I believe that the testimony. There was nobody in that lane. My understanding is that there... In the record, what is the evidence of what the condition of that lane was? I'll have to pick it out, your honor. Yeah, when you sit down, show me what it says. Okay. Go ahead. So the action of Eric Hadfield, who was the groundsman, who was Mr. Meyer's co-employee, who was his boss, and who was his back when he said, listen, Mr. Meyer says, listen, I've got to, I'm up in the bucket, I've got to turn my back and I've got to take this bracket out to remove the light. Do you have my back? Yes, I've got your back. He then has a right to rely on that in order to do his job. And if it means that he has to turn his back. He has a right as a matter of law to do that? He has a right to perform his job with somebody who has his back. That's the purpose of the groundsman, your honor, is to advise him. He has to take care of his safety, but he's got to do his job. His job is not to watch the traffic. He's got a groundsman to do that. 99 times out of 100, a vehicle is not the problem. Here we have a tractor-trailer that's coming along that's admittedly 13.6 feet high off the ground. Is that illegal? It's not illegal, but that's why you have the groundsman to advise you of traffic. Do you have one of those extra things up on top of the car? I don't believe so, your honor. I think it was just. He's a street worker. Under Maryland law, does he assume the risk? Your honor, I think there is good law to the effect that the same duty that is owed to a pedestrian who is in the road is not the same duty that is owned to a worker in the road. It is not, because what the courts have said is that they are looking at what the individual does. Is his job required to take his attention off of the roadway in order to perform his job? And that was the case in the Schutz case that we have cited, where the individual was a highway worker, stopped his vehicle, used the back of his vehicle, the tail, to come down and to do work, and he was hit by another vehicle. The defense raised the issue of contrib, an assumption of risk as a matter of law. The court submitted the issue to the jury, and the court found that it was appropriate to submit it to the jury. On appeal, the defense raised the issue as a matter of law, it should have been contrib or assumption, and a court of appeal says no. And what they said in that case was, this is Schutz versus Breback, your honor, that the worker in a highway cannot be as alert as pedestrians or other travelers, and affirmed the judgment of a lower court. And this is where he had his back to the traffic, and he was struck by a motorist, despite the presence of men working signs, which the defendant said he never saw. So the logical extent of your argument is that the bucket could have been 10 feet high in the intersection, no negligence on his part. It could be, your honor, and what would happen there is, if the warning comes to him from his groundsman, look, we got a tractor-trailer coming, boom, pushes a button, and he booms up to a height where even a 13.6-foot tractor-trailer is going to be able to get under it. That's why, with regard to the issue of proximate cause, the court took away that issue from the jury, where there were facts and inferences which could be gleaned from the issue of material fact that I think was extremely important that was in dispute was, was this lane setup set up appropriately? And the lane setup, as your honors know, had the shoulder closed and the bucket extended over the lane of traffic. And there was testimony in the record that this was an appropriate setup if you have a groundsman to warn you that there is a vehicle that can come by that can interfere with the work that you're doing. Let's go back to the assumption of risk. The Claiborne case is to say that as a matter of law, if he was following usual procedures, he's not negligent. And that is correct, your honor. And the Claiborne case of assumption of risk does not apply in this kind of case under Maryland law. Is that correct? I submit that it was clearly in error for the court to take away this issue from the, it was at least a jury question, your honor, but it was not a cross motion for summary judgment. I thought that Claiborne case said it was, it didn't apply. Yeah. And well there, there was a policeman. Okay. And the policeman, I thought also it was a subjective test anyway. It is a subjective. Well, the judge said, judge here said it was objective. She did. Said a reasonable person wouldn't have done what he did. And it is subjective. What was in Mr. Meyer's mind? What did he know? What did he see? What did he appreciate? And that was not even looked into at all, your honor. And that is the law of Maryland. It is a subjective approach. And what the court did in Claiborne is the same thing, Judge Floyd, that the court did in the Schutz case, which is it denied a motion for summary judgment or denied a motion for summary judgment on the basis of contrib and assumption of risk as a matter of law and submitted the matter to the jury. And what the court said there, and I think it's important, is you cannot carry out your duty as fully as expected and as required and at the same time remain alert to moving traffic as are pedestrians or other pedestrians. There is also disputes as to a material fact here in the context of this. The magistrate judge found that there were genuine disputes of material fact as to Mr. Lamer's conduct. Was Mr. Lamer speeding? Was he on his cell phone? Did he sound or not? I thought he says he was on his cell phone. He says he was on his cell phone, but the court, the lower court said in evaluating his conduct that there are genuine material disputes as to the extent to which that may have caused or contributed to the incident. If those were genuine disputes as a material fact, then how not can the conduct of Mr. Myers, who has a groundsman with his back, identify specifically what is happening if he says, have you got my back? I've got to take this bracket off. And he says, yes, I've got your back. The facts in light most favorable to your client. Yes, you do, Your Honor. And that's why summary judgment here was totally inappropriate. What about the experts? What did the judge do about the experts? Well, the experts reports are not even mentioned in the judge's opinion. But you had an expert that said you were doing things right. That is correct. And she did not consider it. But the expert wasn't excluded. It was not excluded. There's no mention in the report. There's no mention in her opinion of Mr. Balgowin, who was our expert or Mr. Miller, who was our expert. If you have an expert here, if your expert had been able to give his opinions, would that have created, made a prima facie case? Absolutely, Your Honor. I think it clearly would have shown. But there are other facts in the record here before you, even if you don't consider the expert report, which show that this was set up appropriately. This works out. Yes, but interestingly, but if both of them are admissible, we have to accept yours at this stage. That's correct. But the other thing, Your Honor, that is interesting is that their expert, Mr. Miller, in his testimony was asked in his deposition. This is part of the record. Do you feel that Mr. Lamer was correct in attempting to get under the bucket? And his expert said no, he was not correct in attempting to get under the bucket. He was saying Lamer was negligent. He said he was not correct. That, at least. But that would, in light, most favorable to you. It is enough, Your Honor. It's he's saying he's negligent. It is. I'm trying to help you. It is. I, you could draw that inference. You could draw proposition that you're entitled to the facts. I am. And if it's not correct, one could certainly argue it is negligent. And if that is the case, it raises an issue. Well, if he's if that expert says that he's opining that the guy was that the truck driver was negligent. Your Honor, I can't disagree with you. All right. Okay. And clearly, those kind of material disputes raised such. Well, that's not a dispute. That's a fact. It isn't that you get at this proceeding. I do, Your Honor. I don't do that fact. We are supposed to be accorded great deference because we oppose the facts in your favor and all inferences that can and all inferences that can be drawn from it, Your Honor. And if the facts are susceptible of more than one inference, which they were in this case, separate apart from the admission, Your Honor, we get it. And it had to be submitted to the trier fact. Thank you, Your Honors. Now, let's see. Mr. Goodman. Be pleased to hear from you, sir. May it please the court. My name is Brian Goodman. I represent the appellees in this case, Mr. Lamer and Carroll County Foods. And let me just say at the outset that I've been a practicing lawyer in Maryland for a little over 30 years now. This is my first time at the Fourth Circuit, and it's a great honor. We're pleased to have you here. Thank you, sir. Let me get some a few things straight about the facts that Mr. Beckman was a little bit not clear on. The record extract reflects that at the time that this incident occurred, the cones were marked over on the shoulder. And that's where the two trucks were aligned. There was an open lane of travel which they could have closed off and they did not. And in terms of the left turn lane, the undisputed testimony of Mr. Lamer is that there was a car turning. He could not move over to the lane to avoid hitting Mr. Myers. Additionally, what's important is- Did he apply his brakes? He did apply his brakes. Did he try to stop? He did try to stop. We can assume for purposes of today's argument that, I'm not going to admit it, but we can assume that Mr. Lamer was negligent. That's really kind of irrelevant for the analysis that is being done here and the issues are on appeal. Additionally, with regard to the cell phone call- Why is that not relevant to the proximate calls issue? Well, because you don't get to proximate cause because if Mr. Myers either assumed the risk of injury or was contributory negligent under these facts- What about the last clear chance doctrine? Well, the last clear chance doctrine- Is there such a thing in Maryland? There is such a thing in Maryland. And it's been raised for the first time- Do you all still have that contributory negligence? We do. Absolutely. In terms of last clear chance, that's been raised for the first time at this appeal. It wasn't even brought up in court at all. And I submit that that argument's been waived. But even if the court disagrees with me on that, the issue with regard to the assumption of risk and contrib, I think that there's been a kind of a misciting or a misreading of the line of cases on assumption of risk in these roadway workers. The Claiborne case- He says that Lamer and Carroll County Foods were negligent. Lamer was their truck driver, right? No, no. Claiborne is the case from 1971 and 72. No, Claiborne. But in this case, they said he was negligent. That Lamer was negligent in the way he drove through there. I said we can assume that for this argument. That's right. Well, right. And why doesn't that raise the last clear chance doctrine if you want to characterize it that way? He's argued in the context of proximate cause. Well, I understand. I characterize it. It looked to me like last clear chance. But he's arguing it for the first time at this level. We used to have contributory negligence in West Virginia, and they did away with it. Yeah. I think only four states still have it. I think it's Virginia. I'm not sure. Pardon? Yeah, Virginia. Alabama, North Carolina, addition to Maryland. Not very many have it left. No. And they just tried to change it again this past year. In that Campbell versus Soccer Association case. And the Court of Appeals once again in Maryland said that it's the law. But let me get to the notion of highway workers being entitled to some sort of special status or being entitled to rely on their... You think Claiborne doesn't apply. I do. I agree. That is correct. No, you think that. I believe that. That's correct. But that part of the Claiborne, first Claiborne case was not disturbed. Well, but the Court of Appeals, which is, of course, one step above. It's our Supreme Court. The Court of Appeals specifically said with regard to police officers or other highway workers, they said, quote, they, like all other persons, must act reasonably under all of the circumstances. And the fact that they are police officers acting pursuant to their duties is one of those circumstances. So, in other words, Claiborne essentially said there's really no special status. It's just a circumstance you have to consider. And then if you look at the later cases, the much more modern cases, the ADM case, the CN construction case, and the Cotillo case, the weightlifter case. But in that language you just referred us to, that was pertaining to contributory negligence and not assumption of risk. No, no, Your Honor. That specifically dealt with assumption of risk. If you look at Claiborne, it specifically is talking about the issue of special status with regard to assumption of the risk. Those two doctrines are very much intertwined. They really are. And the cases go to great pains to talk about that. But that's really what that case was talking about. Additionally, I want to get back to something that Judge King asked Mr. Beckman about with regard to this whole subjective versus objective test. And Judge Gallagher in this case said it's an objective test. If you look at the Pool case, which is a 2010 or 11 court of appeals case, that talked about affirming Cotillo, or not affirming it, but citing Cotillo, that talked about the fact that really in these cases we go with a subjective test. But the case also says that with a subjective standard, they're not going to, it doesn't mean that any plaintiff can say, well, gee, I didn't understand this risk. I didn't understand what I was doing. You have to look at the facts of each case. Just like in the CN construction case, or more specifically the Cruz versus Hollenbeck case, where the guy was a worker on a gas line and he got injured. And what the Cruz case said, and I believe that was 2010 or 2008 from the court of appeals, the Cruz case said that's so tied in with what you do and you'd been working on the gas lines in this kind of line of work for 10 years. Well, that was also instructive to Judge Gallagher in this case. Mr. Myers had been a highway worker for eight years. He testified at his own deposition on page 88, which is part of this record extract, when he was asked, do you have to look out for traffic? He said, yes. He said, well, because you don't want to get in a situation where you can get hit by a tractor trailer. You have to be aware of your surroundings. Now, all the cases that talk about these highway workers are cases that deal with edging circumstances, emergency situations, cars, a radiator goes up, the hood's up, the police officer can't see. That was one of those older cases. Name escapes me right now. In our case, it is not a defense. When they had ample time to lay out this area, he could have closed off that lane of travel and he can't, specifically in light of even admitting that he's- He didn't do any of that, did he? He was the worker. Somebody else did that. Well, but you can't rely on a third person. The cases are very clear on that. And to say, well, I didn't assume the risk because I was relying on- The boss man did that. Right. The boss man did that. Well, that's just not, that's not a valid defense. They told him to get up and go to work. Right. And the other thing is, in terms of the way this situation, I mean, the scene was set up, it would have taken him maybe, this was not a hugely busy intersection like in the city of Baltimore where you've got traffic. This was down in Southern Maryland, St. Mary's County. How come your guy didn't see those signs? Well, because they're over on the shoulder. They weren't in the lane of travel, which- He didn't see any of them. Of course. Well, he might've seen some signs over there. He was talking on his cell phone to his wife. Well, again, if you're saying that my guy was distracted and arguably that's his own negligence, again, for purposes of this appeal, we can assume that maybe he was negligent, but it doesn't matter under the Maryland law. It does matter under last clear chance doctrine. Well, again, but there's no testimony in terms of last clear chance. They're trying to twist last clear chance. The uncontroverted testimony was that he was off his cell phone. He saw everything in front of him. He saw the guy hanging up there and went right on, but he thought he was going to go right under him. Right. But let's not forget what Mr. Myers did. Mr. Myers is in that bucket. If he had been talking to his wife, he probably wouldn't have been going so fast when he first saw him. That phone call was done. The testimony was that that phone call was done. But Mr. Myers is in that- Is it against the law in Maryland to talk on a cell phone while you're driving? It is now, but it wasn't at the time of this accident. So I wanted to bring that up. So I'm glad you reminded me to do that, Your Honor. But in terms of where Mr. Myers is now, he's in the bucket. He's got control of a button which moves him up or puts him down. He voluntarily turned his back to traffic. Whether he told his coworker or not, he was going to do that. He voluntarily turned his back to traffic when he has to know- He's trying to do a job up there in service to all of us. Yes. Make the highway safe. That is correct. Fix the traffic lights. Right. And whether Maryland, you say it doesn't even give him a special status. Well, it certainly sounds like it ought to. Any highway worker out there hanging over traffic should have a special status. And I think you'd agree with that. And everybody that asked the question would agree with that. Well, I think- You say Claiborne doesn't stand for that. Claiborne says it's just- I thought Claiborne 1 did stand for that. Claiborne 1 does. And it's still good law. Well- That it does stand for that. Claiborne 2, though- And it makes all the sense in the world. Yes. I understand. Your Honor, with regard to getting back to where I was. So he's got total control over what he can do vis-a-vis oncoming traffic. Now, he could have- Let's ground this case back into reality. They could have easily, properly marked- He's got to be up there focused on what his job is. Yes. But he could have closed that lane off. And he has to be able to depend on the fellow that's down below and on the people that laid out the project. And on, in particular, drivers of tractor-trailers coming down through there that are going to use the highway. That they're going to do things right. But it's clear under Maryland law that you can't- In terms of your own conduct, you can't say- This is the Campbell versus- I believe it's the Campbell versus BG&E case. My boss said it was okay, so I went ahead and did this. I was relying on what they represented. You can't say that to avoid these issues of contributory negligence or, more importantly, assumption of the risk. And also, let's get back to he's trying to make us all safe. That's absolutely right. It would have been very easy for them on this particular roadway in Southern Maryland to have marked off that lane of travel and just rerouted everybody over to the left lane if they would have properly marked the area. He chose not to do that. That's fine. You're saying they, and then you say he chose not to do that. I meant he. You said they, so you're talking about the highway department. Well, of course. That's right. And he could have- And he's the underling. He's the guy that's getting up there and doing the job. Well, right. But he also had- The engineers are the one that laid out the project, right? I would assume so, yeah. What happened to the expert witnesses in this case? What happened to them? Here's what happened to them. Those expert witnesses, when we filed our summary judgment motion, and they filed their cross-summary judgment motion, they then, in the response, referenced the testimony of their expert witness, which was not properly authenticated. It was not properly- What do you mean it wasn't properly authenticated? Well, it was- You don't have to file an expert report under oath. But they did file an expert report, and under- You don't have to file one under oath, do you? No, you don't have to file it under oath. Well, you said it wasn't properly authenticated. You file an expert report that lays out what the expert is supposed to say. We had to pose- And Rule 26 gives you some guidelines on what's to put in there. Correct. We had- You make the expert report. And for the purposes of the summary judgment, the judge has got- Or the motions, the judge has got to figure it all out and decide whether it's admissible or not. She can have a hearing. The judge could have a hearing and decide it doesn't pass Dobert or something. But if it's admissible, you've got to take it into account. Correct. Before you grant summary judgment. I agree with that. Otherwise, you can't know what the facts are. Unless, under the facts of the case, such as this one, what the expert had to say, and there were two experts in this case, really didn't matter- We reviewed one for them. Exactly. Right. Now, in terms of when I said properly authenticated, I probably misspoke there. We had to pose their expert. And- So you had an expert report and a deposition under oath. Correct. Well, that's pretty well- That's pretty thorough. And none of it was considered. Correct. In the deposition, he did not testify, and the record's clear on this, as to any of his opinions with a reasonable degree of scientific certainty, or engineering certainty, I should say. That was one of our bases- You were arguing that these expert opinions didn't come in. Correct. But the judge didn't rule on that. Well, I assume- If it overruled them, then they could have appealed that. But you didn't- That didn't come- She didn't rule on it, so it didn't- Well, when we objected to the admission or consideration of this expert report and testimony, when we replied in that regard, there was no response filed by the appellant in this case with regard to using it. So I would argue that they abandoned that because they didn't even try- Abandoned their expert report. Well, abandoned trying to use it for purposes of fighting the summary judgment. It was in the record, I thought, in connection with summary judgment. But it wasn't discussed. Right. It was not discussed by Judge Gallagher. And neither was yours discussed. Right. That expert. Right. We were arguing under the facts of this case, we were really arguing the law. Quite frankly, if there were a Daubert hearing in this case- But the expert said that what? That this project was laid out properly. That what they were doing was a fine way to do it. If it comes in, it basically makes a prima facie case for the plaintiff. Well, if you think- If it comes in. If it comes in. And I'm- It wasn't overruled. It wasn't- No. Knocked out. But the expert, if you read his testimony, his opinions were all grounded in legal opinions. They were essentially, yeah, they were negligent. You know, and that's not- You're arguing about an expert report that was never ruled on. I got you into it, but because of the fact it was not considered. Well, I would contend- But the judge, it seems to me, before you can grant summary judgment, she's got to deal with whether it comes in or not. I don't think she does. It's part of the plaintiff's case. Either it comes in or it doesn't, and if it comes in, it's a different case. If it doesn't come in, it's another case. I don't think she does have- Nobody knows what you're dealing with here. I think we do, and I don't think she does have to deal with it, because I think that under the facts of this case and the Maryland law, when you look at the law, when you look at Cotillo, and you look at the ADM case and the CN case, the assumption of risk here as a matter of law, and frankly, the contrib, are exceedingly clear. No expert on either side would affect that under the facts of this case. You can't get around the fact that the plaintiff in this case voluntarily put himself in a lane of travel without marking it out, specifically said, you have to watch out for a tractor trailer, turned his back, turned his back on traffic, got hit, and then says, oh, but gee, I didn't understand the risks, so let me get to a jury. And that just, it strains credibility. So I don't think that the judge really did have to deal with the expert's report. You're twisting it around to favor, the facts to favor you. He was where he was at the instructions of his employer, carrying out his public duties, trying to repair the traffic lights. Right. But the way he did it. So the traffic lights would work right. Your Honor, I'm not twisting anything. Your guy came through there talking on his cell phone, didn't notice the signs, and knocked him out of the bucket, damn near killed him. Right. Well, I think the injuries are really irrelevant to this. But in terms of damn near killed him, I mean, they're not nearly as serious as has been alleged, but that's not an issue for this court today. But what I was trying to say is with regard to, with regard to the initial question you asked me a moment ago, there were so many other safe and reasonable ways that this plaintiff could have set up this scene. You're talking about an event, an issue that took him maybe two to five minutes to do. He could have set up that zone in a way that was safe. And by his own testimony, you've got to be aware, you've got to look out for traffic. And for him now to come into court and say, well, you've got to be aware and be aware of traffic. But since I didn't, I can sue because I was injured. It doesn't comport with what the cases in Maryland say. Special status or not. I'm not going to concede that he has any kind of special status. But even if he does, what he did shows his affirmative actions on his, by his own conduct, that put him in harm's way. And Maryland does not, the law does not allow you to, to, to recover or file a suit. If we remove it from assumption of risk, and let's look at the contributory negligence argument, as Judge Gregory said in Pellin's argument, one percent, one percent is enough. Now, of course, the Pellin is saying, well, but it's really a jury question because I get the benefit of all the facts. And the plaintiff at this stage of the proceeding does get the benefit of all the facts. What we know is that this plaintiff had total control of how that intersection was set up. What we know is he was on the boom. What we also know is he had the control and turned his back to oncoming vehicles. And as a matter of law, if you look at the Campbell versus BG&E case, and of course, the Coleman versus the Soccer Association case, contrib is still the law in Maryland. So whether or not you believe there's a special status or assumption of risk as a matter of law, clearly, this plaintiff was somewhat responsible for putting himself there, for turning his back to traffic, and for not moving that bucket to avoid attraction. If you go to trial, you could argue that he was contributory negligence and probably get an instruction on it. And if you get an instruction, if you found him 1% negligence, it's a complete bar. Correct. And the jury could figure it out. Yeah, perhaps. But under the facts of this case, there are some situations... Whether the judge is entitled to do it. Correct. Under these circumstances, giving him the advantage of all the facts. I'm giving him the advantage of everything I... Including his expert who's not been excluded. No, the expert has not been excluded. But again, given these facts, given what we know occurred... But the expert can't testify that what he did was proper. That's why she didn't allow it. Exactly. But it's not been excluded. Nothing that the expert proposed to testify to has been excluded. But Judge Gregory makes a very good point. Perhaps the magistrate judge said, well, the expert says that everything he did was okay, but the expert can't... She had all the records. Just because she was quiet about it and didn't mention it one way or the other in her opinion, doesn't mean she didn't consider it. So she probably considered it. And as I'm standing here advocating, she probably thought it's really irrelevant. Did she just overlooked it? I don't think she overlooked it. You think she thought it was irrelevant? I do. But you're speculating. We don't know. It seems to me like taking the view most favorable to the plaintiff, it's coming in. But it came in. It's coming in. It wasn't excluded. And it should have been considered in connection with the summary judgment. And we need to consider it in connection with the summary judgment, reviewing it in the no vote. I agree with you, Your Honor. And I think when you do consider it, as Judge Gregory just said, the opinions that are reflective in that expert's testimony and in his report are really... They don't change the fact that as a matter of law, Mr. Myers assumed the risk of his injuries and was contributory negligent. I mean, they really don't. I've got 10 seconds left. So I do want to thank the court for your time and attention to this case. Are there any other questions of me? Good to have you here. Thank you, Your Honor. You did a good job for your client. Thank you, sir. Ms. Malarkey? Yes, Your Honor. Just to go back and answer the question that was raised during Mr. Beckman's argument with respect to what was in the turn lane. There's just not any evidence of that. We have... That's exactly what I said. That's what I thought. It's not. Because no one was paying attention. We've got Mr... Counselor, there's not a jury argument here. The point is, how can you say that he's negligent because he didn't go into the other lane and there's no evidence that that was available for him? That's the point. Because he had other choices, Your Honor. What's the other choice he had? He had many choices. Like what? Like he could have not been speeding down the roadway. Okay, what was... On this record, what was his speed? There is no... What was his speed? There's no evidence as to his speed. There's no evidence of speed. Now, what else could he have done? He testified when he got close to the intersection, he did estimate a speed of 30 miles an hour that he decreased to 15 miles an hour. Okay, what's the speed limit then? What's the speed limit? I believe that it's 55. Well, then he wasn't speeding. At the time that he got right under the intersection, he testified about that. So... But the only evidence as to his speed, it was under the speed limit. I think there is enough evidence... No, it's not enough evidence. Answer my question. The only evidence of his speed is the speed that is under the posted speed limit, correct? That is correct. Is there any evidence of his going a speed that exceeded the posted? There is not. Okay, well, that's what I mean by there's no evidence of speeding. However, there is a mountain of circumstantial evidence from which a reasonable jury can conclude that he was driving negligently. Absolutely. That's what counsel is conceding, that maybe so. But the point is this, it is undisputed. One, that there was no evidence of excessive speed. Two, there's no evidence that truck exceeded the height limitation, correct? Correct. Undisputed, correct? It is undisputed that this accident happened because your client's bucket was lower than the permissive height of a truck that had the right to go through the intersection. Is that correct? That is not correct. All right, tell me what part is wrong. It is... Answer my question now, counsel. This is a very exact question. Your Honor, your Honor just stated, is it undisputed that the cause of the accident was the fact that the bucket was not high enough to avoid the trailer? Okay. You just flip it around. Is it undisputed that Mr. Lamer had the chance to avoid the collision instead? If a jury could conclude... You have not set a case up for last clear chance. Last clear chance normally implies that, look, first of all, do you concede negligence? On the part of our client? Yeah. Absolutely not. But then this is not a last clear chance case then. Last clear chance case is, yes, I was negligent. However, there was enough time to observe my negligence and avoid this accident. You have not made that case below. Our argument was as a second resort, if a jury were to conclude that Mr. Myers were negligent, then our position is that Mr. Lamer had the last clear chance. Our primary position... She didn't argue that below. And you don't have a case that set up the structure for that. I think we do. First of all, I think that last clear chance is essentially a causation argument. We made that argument below. We actually argued that the cause of the accident and that we are entitled to summary judgment and cross... So you said there were no facts in dispute because you asked for summary judgment. We said there were no facts in dispute as to Mr. Lamer's negligence and as to him being the ultimate sole cause of this accident. That was our argument below. But your bucket was too low. You obscured the roadway. And I'm sorry, you obstructed the roadway. We obstructed the roadway for a tractor trailer driver who wasn't paying attention, who was on his cell phone, who didn't even see the signs that were coming up the roadway that were there in plain view. But counsel, even if that's true, you're still the person who obstructed the roadway. That makes you... You have to be somewhat negligent. But when you look at assumption of the risk and contributory negligence, you have to look at what was Mr. Myers thinking and what was his state of mind at the time. He did not know that his bucket was too low. It's not his fault. No, that's why he has a guy on the ground. But the guy on the ground said from where he was, he couldn't determine that it was... He thought it was clear too. No, the guy on the ground got in his truck and failed to pay attention. He said, the guy on the ground... What about negligence of your client? The guy on the... Well, actually, Your Honor, they were reprimanded. It's interesting. The only person who faults Mr. Myers is the magistrate judge. When a investigation was concluded after this accident by both the employer of Mr. Myers, Mr. Hatfield was disciplined for abandoning his job and not being a proper lookout for his coworker. And Mr. Lamer was disciplined by his employer for causing the accident and colliding with a bucket that was plainly in front of him. Mr. Myers is the only person who wasn't found at fault by people who did investigations that were actually involved in this case. And my time is ending. But I'd just like to point out, the doctrines of assumption of the risk is to provide a your conduct was so unreasonable, we absolved the defendant of any culpability. You have waived any argument that you have to say that he's responsible. This is not the case to apply that. At what distance on this record should he have been able to determine that the bucket was too low? The truck driver? Yeah. At what distance? Yeah. As soon as he saw it. Or if he didn't see it, that's his fault for not seeing it. There were signs starting a mile and a half down the road to warn him. Was there any sign said there were workers overhead, working done overhead? It was generic signage, work ahead. So that could have been somebody mowing grass on the side road. Which is exactly why you have to pay attention to what is going on. So. Because you don't know. So there are signs to alert you. And you have a heightened awareness of what is going on. Instead of being on your cell phone and not looking at someone who is plainly ahead of you, that you testified, or that you admitted at the scene of the accident afterwards to two different people. I saw him. I thought I could get under him. In the Stinchcomb case that we cited in our brief, which is admittedly an unreported decision, but of this circuit, this circuit held that under circumstances very, very similar, allowing the case to, or keeping the case from the jury would be tantamount to letting drivers on the roadway drive with impunity. That's exactly the result in this case. Thank you, Your Honor. Thank you, Ms. Malarkey. We appreciate it. We'll come down in Greek Council and adjourn court until 9.30 tomorrow morning.
judges: Robert B. King, Roger L. Gregory, Henry F. Floyd